[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 97-2586

_____

D.C. Docket No. 96-469-CIV-ORL-18

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

2/18/03

THOMAS K. KAHN
CLERK

GIANELLI MONEY PURCHASE PLAN
AND TRUST, PENELOPE GIANELLI,
Trustee,

Plaintiffs-Appellees,

versus

ADM INVESTOR SERVICES, INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(July 22, 1998)**

Before CARNES and HULL, Circuit Judges, and HENDERSON, Senior Circuit Judge.

CARNES, Circuit Judge:

ADM Investor Services, Inc. ("ADM") appeals the district court's order vacating an arbitration award in its favor. The district court concluded that the arbitrator had displayed "evident partiality" because of past business contacts between his employer and ADM's corporate representative at the arbitration. Because we hold that an arbitrator cannot be guilty of "evident partiality" absent actual knowledge of a real or potential conflict, we conclude that the district court erred in vacating the arbitration award. Accordingly, we reverse the district court's order and remand with instructions to grant ADM's cross-petition for confirmation of the arbitration award.

## I. BACKGROUND

ADM is a futures commission merchant licensed with the Commodity Futures Trading Commission ("CFTC"). Basic Commodities, Inc. ("Basic") is also registered with the CFTC. In 1992, ADM and Basic entered into an agreement under which ADM executed commodities trades for customers brought in by Basic. The agreement contained an indemnity

provision requiring Basic to indemnify and hold ADM harmless for any damages it incurred because of losses suffered by Basic clients. Basic president Kent C. Kelley ("Kelley") executed this agreement on behalf of Basic, and also personally guaranteed Basic's contractual undertakings.

One of the clients that Basic brought to ADM was the Gianelli Money Purchase Plan and Trust, Penelope Gianelli, Trustee ("Gianelli"). Gianelli lost approximately $100,000 from November 1994 through July 1995 as a result of its investments in the futures markets. Gianelli claims that Kelley's mismanagement of its account caused these losses. In an attempt to recoup its losses, Gianelli filed a claim against ADM with the American Arbitration Association ("AAA"). It sought to hold ADM liable on an agency theory, asserting that it was liable for the wrongdoings and mismanagement of Kelley, Basic's president.

The parties jointly selected Keith Houck ("Houck") as sole arbitrator. Houck has served as officer manager for the law firm of Gray, Harris & Robinson ("Gray Harris") since 1990. Immediately prior to the arbitration hearings, Gianelli discovered that Gray Harris had represented Kelley in a

1992 securities case, the Neilson case. When Gianelli asked about this, Houck asserted that he was unaware of the case, while Kelley asserted (falsely) that Gray Harris's representation of him was an isolated incident. In addition, Houck signed an Arbitrator's Oath which stated that he had nothing to disclose. After receiving these assurances, Gianelli accepted Houck as the sole arbitrator. Houck conducted the arbitration hearings on January 25 and 26, 1996. Kelley was present throughout the hearing, and the district court found that Kelley was ADM's corporate representative at the "mediation." The proceedings were not recorded. On February 7, 1996, Houck rendered an award in favor of ADM, finding it not liable to the Trust.

Gianelli contends that, after Houck rendered the decision in favor of ADM, it discovered Kelley had frequent contact with Gray Harris. In particular, Gray Harris helped Kelley form three companies and represented two others in 1976; the firm also represented Kelley as an individual from 1977 to 1986. On May 2, 1996, Gianelli filed this petition to vacate the arbitration award, contending that Houck, as an employee of

4

Gray Harris, had displayed partiality to ADM. ADM subsequently filed a cross-petition to confirm the arbitration award. The matter was referred to a magistrate judge, who, after hearing oral argument, issued a Report and Recommendation recommending that the district judge grant Gianelli's petition to vacate the arbitration award. The district court adopted that Report and Recommendation in its entirety, and vacated the arbitration award. ADM appeals.

## II. STANDARD OF REVIEW

We have previously held that we review an order vacating an arbitration award de novo. See Robbins v. Day, 954 F.2d 679, 681 (11th Cir. 1991). We justified that standard of review, which is more stringent than the abuse of discretion standard under which we reviewed orders confirming arbitration awards, by relying on the federal policy favoring arbitration and limited review of arbitral awards. See id. at 682. Since we issued our decision in Robbins, however, the Supreme Court has provided additional instruction about the proper standard that courts of appeals must use to review orders confirming or vacating arbitration awards. Of course,

5

"[w]here prior panel precedent conflicts with a subsequent Supreme Court decision, we follow the Supreme Court decision." Cottrell v. Caldwell, 85 F.3d 1480, 1485 (11th Cir. 1996); accord, e.g., Lufkin v. McCallum, 956 F.2d 1104, 1107 (11th Cir. 1992).

In First Options of Chicago, Inc. v. Kaplan, 115 S. Ct. 1920, 1926 (1995), the Court indicated that where the district court has confirmed an arbitration award, the appellate court must review the district court's factual findings for clear error and its holdings of law de novo. Several other courts of appeals have concluded that First Options mandates the same standard whether the order being reviewed confirms or vacates the arbitration award. See, e.g., Wackenhut Corp. v. Amalgamated Local 515, 126 F.3d 29, 31 (2d Cir. 1997) ("We review a district court decision upholding or vacating an arbitration award de novo on questions of law and for clearly erroneous findings of fact."); Barnes v. Logan, 122 F.3d 820, 821 (9th Cir. 1997) ("Appellate courts review the confirmation or vacation of an arbitration award like any other district court decision . . . accepting findings of fact that are not 'clearly erroneous' but deciding questions of law

6

de novo.") (internal quotes omitted), <u>cert. denied</u>, 118 S. Ct. 1385 (1998);

<u>Glennon v. Dean Witter Reynolds, Inc.</u>, 83 F.3d 132, 135 (6th Cir. 1996)

("When reviewing a district court's decision to vacate or confirm an

arbitration award, we review findings of fact for clear error and questions

of law de novo.").

We also conclude that <u>First Options</u> requires us to apply the same

standard of review to orders vacating arbitration awards as we apply to

orders confirming arbitration awards. Three considerations that the

Supreme Court identified in <u>First Options</u> compel that conclusion. First,

the Court stated that "it is undesirable to make the law more complicated

by proliferating review standards without good reasons." <u>First Options</u>, 115

S. Ct. at 1926. Second, the Court indicated that the policy considerations

that work to create a presumption of validity for arbitration awards cannot

be the basis for a two-tiered review system, depending on whether the

district court confirmed or vacated the award. Specifically, the Court

stated, "[T]he reviewing attitude that a court of appeals takes toward a

district court decision should depend upon the respective institutional

7

advantages of trial and appellate courts, not upon what standard of review will more likely produce a particular substantive result." See id. (internal quotes omitted). That statement directly undercuts our position in Robbins that the policy favoring confirmation of arbitration awards justifies different standards of review depending on whether we are reviewing an order confirming or vacating an arbitration award. See Robbins, 954 F.2d at 682.

Finally, the Supreme Court stated that the policy giving arbitrators considerable leeway in their decision making does not mean that reviewing courts should give additional deference to district courts when they confirm arbitration awards. See First Options, 115 S. Ct. at 1926. We cannot hold orders vacating an arbitration award to a stricter standard, because doing so would accord greater deference to orders confirming awards, and First Options prohibits that. Our Robbins decision and any others providing a dual standard of review for arbitration orders must yield to First Options. Accordingly, orders vacating arbitration awards, like orders confirming

them, are to be reviewed for clear error with respect to factual findings and de novo with respect to the district court's legal conclusions.

## III. DISCUSSION

The Federal Arbitration Act ("FAA") provides that a federal district court can vacate an arbitration award, but only in extremely narrow circumstances. See 9 U.S.C. § 10. One of the grounds the FAA expressly sanctions as a basis for vacating an arbitration award is partiality on the part of the arbitrators:

> In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the application --
>
> > (2) Where there was evident partiality or corruption in the arbitrators, or either of them.

9 U.S.C. § 10(a). The district court relied on that ground -- evident partiality, not corruption -- in vacating the arbitration award in this case. Specifically, it concluded that Kelley's frequent business contacts with Gray Harris, Houck's employer, would lead a reasonable person to conclude that Houck "was tainted with evident partiality."

9

We begin our analysis by noting that the purpose of the Federal Arbitration Act was "to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that would be speedier and less costly than litigation." O.R. Secs. v. Prof'l Planning Assocs., Inc., 857 F.2d 742, 745 (11th Cir. 1988) (internal quotes omitted). Judicial review of arbitration awards is "narrowly limited," and the FAA presumes that arbitration awards will be confirmed. See Davis v. Prudential Sec., Inc., 59 F.3d 1186, 1188 (11th Cir. 1995). Therefore, the "evident partiality" exception is to be strictly construed, as it must be if the federal policy favoring arbitration, see, e.g., Booth v. Hume Publ'g, Inc., 902 F.2d 925, 932 (11th Cir. 1990), is to be given full effect. The alleged partiality must be "direct, definite and capable of demonstration rather than remote, uncertain and speculative." Middlesex Mut. Ins. Co. v. Levine, 675 F.2d 1197, 1202 (11th Cir. 1982) (internal quotes omitted); see Scott v. Prudential Secs., Inc., 141 F.3d 1007, 1015 (11th Cir. 1998).

In vacating the arbitration award in this case, the district court relied heavily on Schmitz v. Zilveti, 20 F.3d 1043 (9th Cir. 1994). In that case,

the Ninth Circuit found evident partiality where an arbitrator, who was also an attorney, did not investigate potential conflicts or disclose that his firm had performed legal work for one of the parties' corporate parents. See id. at 1048. Schmitz held that the arbitrator's failure to investigate could create a reasonable perception of partiality. See id. at 1048-49.[1]

The district court found Schmitz to be closely analogous to this case. In particular, the court noted that, as in Schmitz, the arbitrator (Houck) was employed by a law firm (Gray Harris) that had a long-standing relationship with someone closely connected to one of the arbitrating parties (Kelley). Furthermore, the district court reasoned that had Houck investigated possible conflicts of interest as Schmitz requires, he would have discovered the previous work that Gray Harris had performed for Kelley, and disclosure of that relationship would have afforded Gianelli a more informed basis upon which to decide whether to proceed with Houck as

---

[1]We note that although Schmitz cites to our decision in Middlesex Mutual Ins. Co. v. Levine, 675 F.2d 1197, 1202 (11th Cir. 1982), it does so only for the proposition that "[s]ome courts have considered an arbitrator's lack of knowledge as a factor in determining whether evident partiality was present." Schmitz, 20 F.3d at 1048.

arbitrator. Therefore, the district court, following <u>Schmitz</u>, concluded that it should vacate the arbitration award.

The problem with the district court's analysis is that <u>Schmitz</u> conflicts with the law of this Circuit. In <u>Lifecare Int'l, Inc. v. CD Medical, Inc.</u>, 68 F.3d 429 (11th Cir. 1995), the arbitrator accused of "evident partiality" became "of counsel" to a law firm that had two contacts with CD Medical, including one "for the purpose of obtaining representation in the instant dispute." <u>Id.</u> at 434. This Court noted that even the most routine background check by the arbitrator would have brought this information to light. However, we also pointed out that there was no evidence that the arbitrator was actually aware of these past contacts. Because there was no evidence that the arbitrator had actual knowledge of the past contacts, we confirmed the arbitration award and rejected the proposition that the arbitrator had a duty to investigate the past contacts to avoid evident partiality. In the present case it was error for the district court to rely on <u>Schmitz</u>, because its holding that an arbitrator's failure to investigate past

contacts with one of the parties may constitute "evident partiality" is squarely at odds with the position we took in Lifecare.

Instead of following Schmitz, the district court should have applied the law of our circuit, which is that an arbitration award may be vacated due to the "evident partiality" of an arbitrator only when either (1) an actual conflict exists, or (2) the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists. See Lifecare, 68 F.3d at 433; Levine, 675 F.2d at 1202 (party challenging arbitration award must establish reasonable impression of partiality that is "direct, definite and capable of demonstration rather than remote, uncertain and speculative.") (internal quotes omitted). Whether these conditions have been met ordinarily requires a fact-intensive inquiry. See Lifecare, 68 F.3d at 435.

Performance of that inquiry here leads us to conclude that neither of the conditions for "evident partiality" exists in this case. The district court made a factual finding, supported by the evidence in the record, that Houck was not actually biased against Gianelli. Therefore, the first condition

under which an award may be vacated for evident partiality, the existence of an actual conflict, was not present in this case.

As for the second condition, the district court did not expressly find that Houck was aware of Kelley's involvement with Gray Harris with the exception of the Neilson case, and Houck became aware of that only when Gianelli informed him immediately prior to the arbitration hearings. Gianelli accepted Houck as an arbitrator with full knowledge of Gray Harris' representation of Kelley in the Neilson case. Therefore, Houck's knowledge of that connection cannot be the basis for a finding of "evident partiality."

It is not entirely clear from the district court opinion whether it implicitly found that Houck was aware of any relationship Kelley had with Gray Harris other than the Neilson case. However, if the district court did make such an implicit finding, that finding is clearly erroneous. All of Kelley's contacts with Gray Harris, with the exception of the Neilson case, pre-date Houck's employment at the firm. There is nothing in the record to indicate that Houck knew of any connection between Kelley and Gray

14

Harris prior to 1990, when Houck joined the firm. Although given abundant opportunity to do so, Gianelli, who has the burden of persuasion, has not pointed to any evidence suggesting that Houck was aware of any relationship between Kelley and Gray Harris other than the Neilson case. As a result, the only conclusion that the record will support is that Houck was unaware of any other relationship. Because Houck did not have actual knowledge of the information upon which the alleged "conflict" was founded, the second "evident partiality" condition is not present in this case.

We reverse the district court's order vacating the arbitration award in favor of ADM and remand with instructions that the district court grant ADM's cross-petition for confirmation of the arbitration award.

REVERSED and REMANDED.