Affirmed and Petition for Writ of Mandamus Denied and Majority and
Dissenting Opinions filed January 23, 2003









 

Affirmed and Petition for Writ of Mandamus Denied and
Majority and Dissenting Opinions filed January 23, 2003.

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NOS.
14-01-01005-CV and

   14-02-00443-CV

____________

 

HOUSTON VILLAGE BUILDERS, INC.,
Appellant

 

V.

 

WILLIAM CRAIG FALBAUM and JENNIFER P. FALBAUM,
Appellees

 

and

 

IN
RE HOUSTON VILLAGE BUILDERS, INC., Relator

 



 

On
Appeal from the 151st District Court

Harris County, Texas

Trial
Court Cause No. 99-41945

and

Original Proceeding

Writ of Mandamus

 



 

D
I S S E N T I N G   O P I N I O N








The Aevident
partiality@ analysis necessarily entails a fact-intensive inquiry, and in
this area of the law, bright-line legal rules are sparse, and analogous cases
are difficult to find.  Mariner Fin.
Group, Inc. v. Bossley, 79 S.W.3d 30, 34 (Tex. 2002).  Given the facts of this case, the court errs
in concluding that the arbitrator, an attorney, exhibited evident partiality by
failing to disclose an attorney-client relationship with a trade association
which was neither a party nor a witness and whose relationship with the
arbitrator could not reasonably have been perceived as creating an impression
of partiality in the eyes of an objective observer.  See Burlington N. R.R. Co. v. TUCO,
Inc., 960 S.W.2d 629, 636B37 (Tex. 1997).

Though our case
law gives relatively little guidance on where to draw the line on disclosure of
indirect ties such as the one at issue here, it is clear that not every
relationship, connection, or interest is subject to disclosure under the TUCO
standard.  See Mariner Fin.
Group, Inc., 79 S.W.3d at 32 (quoting TUCO as stating a Aneutral
arbitrator need not disclose relationships or connections that are trivial.@).  That is why it is so important for courts to
scrutinize both the nature and the directness of the interest or
relationship in determining whether disclosure is required. 

Under TUCO=s
objective test, Athe consequences for nondisclosure are directly tied to the
materiality of the unrevealed information.@  Mariner Fin. Group,
Inc., 79 S.W.3d at 32.  To warrant
vacatur of the arbitration award based on evident partiality, the arbitrator=s
connection to a party, its counsel, or a witness should be material and
strongly suggestive of partiality.  See
Mariner Fin. Group, Inc., 79 S.W.3d at 33 (noting that the
relationship in TUCO arose from a lucrative business referral to one of
the arbitrators and thus was not trivial); J. D. Edwards World Solutions Co.
v. Estes, Inc., CS.W.3dC, 2002 WL 31526556, at *7C*8 (Tex. App.CFort Worth, Nov. 14, 2002, pet. filed) (finding evident
partiality where arbitrator failed to disclose attorney-client relationship
with party to arbitration); accord Texas Commerce Bank v. Universal
Technical Inst. of Tex., Inc., 985 S.W.2d 678, 680B81
(Tex. App.CHouston [1st Dist.] 1999, pet. dism=d w.o.j.).  Here, the
arbitrator, Stephen Paxson, had no undisclosed connection to any party, lawyer,
or witness in the arbitration.  The Aunrevealed
information@ was an attorney-client relationship between Paxson and Greater
Houston Builders Association (AGHBA@), a large trade association that was neither a witness nor a
party and which had no cognizable interest in the arbitration.








Though our high
court has adopted a very broad standard for arbitrator disclosures, the
standard is not without limits and those limits are defined by
reasonableness.  See TUCO, Inc.,
960 S.W.2d at 636 (holding that a potential arbitrator should disclose facts
that, to an objective observer, might create a Areasonable impression@
of partiality; and Athe parties must have access to all information which might
reasonably affect the arbitrator=s partiality.@) (emphasis added).  An
outside observer might form any impression about the arbitrator=s
partiality, but unless the impression is a reasonable one to objective eyes, it
will not support a finding of evident partiality.  See id.  

Because the
reasonableness of an impression of partiality is dependent on whether the
undisclosed information was material, the outcome in this case hinges on the
materiality of the Paxson-GHBA attorney-client relationship vis-à-vis
the arbitration.  See Mariner Fin.
Group, Inc., 79 S.W.3d at 32.  As
explained below, though additional facts not present here could have made that
relationship material and thus made disclosure necessary under TUCO,
this relationship in and of itself did not give rise to a reasonable impression
of arbitrator partiality and thus did not require the arbitrator to disclose
it. 

Houston Village
Builders, Inc. (AVillage Builders@) and its parent company, Lennar Homes are only two of
approximately 1350 members of GHBA. 
Individual membership in an association of that size does not carry with
it the rights, privileges, control, and influence typically enjoyed by an
association=s leadership, management, or elected board of directors.
Consequently, an objective observer would not attribute any significant
influence to an individual member, and thus could not reasonably conclude that
two of GHBA=s 1350 members could have such weight and influence by virtue
of mere membership that the association=s lawyer, while serving as an arbitrator in a non-GHBA dispute,
might feel compelled to rule for them simply because they are members. 








The Falbaums
were not required to prove Paxson was actually biased in favor of Village
Builders and Lennar Homes.  See TUCO,
Inc., 960 S.W.2d at 636.  But they
must point to something that would have caused an objective observer to
conclude that his impartiality might be compromised because he was GHBA=s
lawyer.  See id.  An objective observer could not conclude, without
speculating, that it somehow would be better for GHBA (or Paxson) if one
side prevailed.  The impression of
partiality must be reasonable and a reasonable impression is not based on
speculation, conjecture or surmise, but on an objective view of the facts.  See TUCO, Inc., 960 S.W.2d at 636
(holding that the impression of partiality must be reasonable); Briones v.
Levine=s Dept. Store, Inc.,
446 S.W.2d 7, 10 (Tex. 1969) (holding that a reasonable inference cannot be
based on speculation).

The majority
asserts that its conclusion is reasonable and not speculative because the
record shows that Paxson represented GHBA in two unrelated cases that involved
similar issues. Though the  majority
points to GHBA=s interest in these cases, it does
not explain how or why that interest is any indication of a GHBA interest in
the Falbaums= dispute with Village Builders and
Lennar Homes.[1]  The majority does not identify any reason
it would or might be better for GHBA if either side prevailed, nor does the
majority explain how or why GHBA might have an interest in seeing Village
Builders or Lennar Homes prevail over the Falbaums in the arbitration.  Whatever position GHBA may have taken (or
Paxson may have asserted on behalf of GHBA) in two other cases is no indication
of a cognizable interest in an unrelated non-GHBA arbitration.  GHBA had no stake in the subject matter of
the arbitration, and the arbitration could not possibly have created any
binding precedent for any other case.  See
El Dorado Tech. Servs., Inc. v. Union General de Trabajadores de Puerto Rico,
961 F.2d 317, 321 (1st Cir. 1992) (AIt is black letter law that
arbitration awards are not entitled to the precedential effect accorded to
judicial decisions.@)  Because there was
nothing to suggest to an objective observer that what might happen in the
arbitration would or could have any implication for GHBA, it is pure
speculation for the majority to conclude that GHBA=s interest in two unrelated cases
might give the impression of Paxson=s partiality in the arbitration.








Moreover, it is
not reasonable to conclude that a 1350-member trade association or its lawyer
would be concerned with the outcome of a non-association dispute between two
individual members and third parties. 
Trade associations are typically concerned with furthering the interests
of the industries they serve rather than advancing the private interests of
their individual members.  Nothing in the
record suggests that GHBA is motivated by anything other than the collective
interests of its members.  There is
certainly nothing that would suggest to an objective observer that GHBA
provides support or assistance to individual members in connection with their
individual disputes with third parties or that GHBA counseled, assisted, or
supported Village Builders or Lennar Homes regarding their dispute with the
Falbaums.  It is not reasonable to
attribute the views and desires of two individual members to a large association
to which they belong.  The views of an
individual member do not necessarily reflect the views of an organization; and
the goals and desires of an individual member do not necessarily reflect the
interests and objectives of the organization. 
GHBA had no interest of any kind in the arbitration and there was no
reasonable basis for an objective observer to conclude that its lawyer, while
serving as an arbitrator in a non-GHBA dispute, would favor either side in the
arbitration.








Though
the majority does not suggest or identify any reason it would or might be
better for GHBA if Village Builders and Lennar Homes prevailed in the
arbitration, the majority implicitly attributes an Aindustry member should always win@ mentality to GHBA.  An objective observer would not do so.  An objective observer would consider the
nature and purpose of an organization like GHBA, and conclude that trade associations,
which are typically concerned with promoting good industry practice, would
condemn, not sanction, conduct of an industry member that fell below that
standard.  Consequently, an objective
observer would not conclude, as the majority does, that a trade association
that was a stranger to a builder-homeowner dispute might have an Ainterest@ in it solely because it sided with
builders in two other, unrelated cases. Applying that logic, one could just as
easily resolve that an objective observer might conclude that the
American Bar Association has an interest in seeing the lawyer prevail over the
client in every legal malpractice case, or that the American Medical
Association has an interest in seeing the doctor prevail over the patient in
every medical malpractice case.  Neither
conclusion is reasonable.  An objective
observer would not conclude that GHBA had an interest in seeing the builder
prevail over the homeowner in every residential construction case and would not
conclude that GHBA had an interest in seeing Village Builders and Lennar Homes
prevail over the Falbaums in this arbitration.

Nor
would an objective observer conclude that Paxson=s representation of GHBA in two
unrelated cases might impact his impartiality as an arbitrator in the Falbaums= dispute with Village Builders and
Lennar Homes.  When an attorney dons an
arbitrator hat, he takes an oath to consider only the evidence presented by the
parties, to cast aside any personal opinions he might have, and to base his
award on the applicable law and the facts before him.  It is only when there is something which
might cause an objective observer to reasonably question the arbitrator=s ability to do so, that disclosure
is required.  See TUCO, Inc.,
960 S.W.2d at 636. 








An objective
view of the facts shows GHBA=s only connection to the arbitration is that the
arbitrator was one of the lawyers that performed legal work for the
association.  But the arbitrator=s
attorney-client relationship with GHBA is not tantamount to an attorney-client
relationship with its individual members. 
In representing GHBA, Paxson does not represent each of its 1350
members.  See Sutton v. Mankoff,
915 S.W.2d 152, 157B58 (Tex.
App.CFort Worth 1996, writ denied) (holding that an attorney retained to
represent an entity does not represent its individual members).  Though Paxson=s client list includes companies that are members of GHBA, he
also has represented third parties against members of that
association.  The disclosure materials
stated that Paxson concentrated 70% of his law practice in the construction
area, primarily representing general contractors, builders, developers,
designers, owners, subcontractors, and speciality contractors involving private
commercial and residential projects. 
Common sense suggests that a lawyer who concentrates in the construction
area and represents a host of non-builders as part of his legal
practice, from time to time, would be adverse to builders who are members of
GHBA, particularly given the size of the trade association.  Thus, it would not be reasonable for an
objective observer who knew these facts about Paxson=s
law practice to conclude that an arbitrator in Paxson=s
position might be influenced into ruling in favor of a trade-association member
merely Ato
protect his status as the association=s counsel.@ [2]  Nor would it be reasonable for an objective
observer to draw this conclusion even if these facts had not been disclosed
because in the context of a non-GHBA dispute, the GHBA membership of Village
Builders and Lennar Homes does not reach the materiality threshold necessary to
require disclosure of the arbitrator=s attorney-client relationship with GHBA.

Apparently, the
only published case in which a court has found evident partiality based on
non-disclosure of an attorney-client relationship between the arbitrator and a
non-party/non-witness is Schmitz v. Zilveti, 20 F.3d 1043, 1044 (9th
Cir. 1994).  In that case, the non-party
was the parent company of one of the parties to the arbitration and a former
client of the attorney arbitrator=s law firm.  See
Schmitz v. Zilveti, 20 F.3d 1043, 1044 (9th Cir. 1994).  The majority asserts that Paxson=s
attorney-client relationship with GHBA can be compared to that of the
arbitrator in Schmitz. Noting the absence of any evidence in that case
that the parent company controlled the actions of the subsidiary,[3]
the majority states that the Schmitz court nevertheless concluded the
arbitrator=s firm=s prior representation of the parent company was Alikely
to affect impartiality or [might] create an appearance of partiality.@  Id. at 1049.








This analogy to
the facts of Schmitz is flawed because there are significant factual
differences between this case and Schmitz.  In Schmitz, the non-party (parent) had
an ownership interest in a party to the arbitration B
an interest that, by its very nature, gives rise to a relationship of control
and influence.  It is this relationship B
and the financial interest it implicates B that supported evident partiality in Schmitz.  An objective observer might form a reasonable
impression that an arbitrator whose law firm served as counsel to a parent
corporation (non-party) for thirty-five years might be biased in favor of that
corporation=s subsidiary (party). 
Thus, the Schmitz court was correct in finding evident partiality
in that case.  The facts presented by our
record are notably different.  

Here, there is
nothing to show or even suggest any relationship of control or influence, or
any financial interest, between any party or witness to the arbitration and
GHBA (the arbitrator=s client), or vice versa. 
Unlike the arbitrator in Schmitz, Paxson has never had an
attorney-client relationship with one who was in a position of control or
influence, by stock ownership or otherwise, with a party to the
arbitration.  GHBA has never had an
ownership interest in Village Builders or Lennar Homes, nor has it ever had any
equivalent control relationship or financial interest with or in these
parties.  Nor is there anything to
suggest to an objective observer that Village Builders or Lennar Homes (parties)
have any influence or control over GHBA (non-party) and, as previously noted,
it would not be reasonable  to infer such
control or influence in this factual context. 

Though Village
Builders and Lennar Homes are GHBA members, there is nothing to suggest to an
objective observer that either company or any of their employees then played
(or anticipated playing) any role in GHBA=s management, operation, or administration.  Nor is there anything that would suggest that
mere members of GHBA (who are not officers or employees of GHBA) had any past,
current, or anticipated future involvement or voice in the selection or
retention of GHBA=s legal counsel.  And, unlike
a scenario involving a parent and subsidiary where control and influence are
apparent, it would not be reasonable to conclude that Village Builders or
Lennar Homes, only two of 1350 members, were in any position to impact or
influence such decisions, or that either of these parties had any current or
future influence or control over GHBA=s attorney-client relationship with Paxson. 








By
concluding that an objective observer might form a reasonable impression Athat
someone in the Arbitrator=s position might be influenced into ruling in favor of a
trade-association member to protect his status as the association=s
counsel,@[4] the majority fails to credit an outside observer=s
objectivity and discernment.  An
objective observer bases his judgment on observable phenomena B
something that is capable of being seen or noticed.  In the absence of observable facts that would
indicate that  two members of a
1350-member association had some measure of control or influence over the
association=s lawyer or within the association itself, an objective
observer could not form a reasonable impression that Village Builders or Lennar
Homes would be in a position to impact the arbitrator=s
impartiality in a dispute that did not involve the association.  If an objective observer formed the
impression of partiality based solely on Paxson=s ongoing service as counsel for GHBA, that impression would
not be reasonable.  The connection is
simply too attenuated. Absent a nexus that would make the parties=
GHBA membership material, disclosure of this non-party/non-witness
attorney-client relationship was not required under TUCO.  See Mariner Fin. Group Inc., 79 S.W.3d
at 32.








If
there were facts which would suggest to an objective observer that Paxson=s
financial interests were implicated by virtue of an attorney-client
relationship with a non-party or non-witness, the analysis would change.  Indeed, an objective observer might
reasonably conclude that an attorney arbitrator might be partial to a party who
is in a position to direct or influence his client=s
decisions regarding the attorney arbitrator=s current or future legal business for the non-party.  See Mariner Fin. Group, Inc., 79 S.W.3d at
33 (noting that the relationship in TUCO grew out of Aa
lucrative business referral@ to one of the arbitrators and thus was not trivial).  An arbitrator=s financial interest in securing or maintaining his non-party
client=s
legal business would support evident partiality in a case involving an
undisclosed relationship with a non-party client of the arbitrator.  Thus, if there had been some reasonable basis
for concluding that Village Builders, Lennar Homes, or their employees were
involved in the decision-making for GHBA=s attorney-client relationships, then Paxson=s
pecuniary interests would have been implicated and there would have been a
basis for finding evident partiality.  See id.  But there is no reasonable basis for an
objective observer to conclude that any pecuniary interests might have been
implicated in this case.  There is no
evidence C not even an allegation C that Village Builders or Lennar Homes (or anyone affiliated
with these parties) had or anticipated any involvement in GHBA=s
decisions to retain or select the association=s legal counsel or in the association=s
decision to retain Paxson as one of its lawyers. 

To
summarize, though the presence of additional factors, such as Village Builders
or Lennar Homes= participation in selection of counsel for the association or
involvement in its management or administration, might compel the need to
disclose the unrevealed information, the mere existence of this
non-party/non-witness attorney-client relationship in and of itself would not
cause an objective observer to reasonably doubt Paxson=s
impartiality.  See TUCO, Inc.,
960 S.W.2d at 636.  Nor does the
non-disclosure of the Paxson-GHBA attorney-client relationship, standing alone,
suggest that Paxson was concealing something important or material concerning
his impartiality in a non-GHBA dispute. 

This
case brings into sharper focus the tension between attaining full and complete
disclosure while, at the same time, avoiding the pitfalls and impracticalities
of a system that, in effect, would require the arbitrator to make immaterial
disclosures and impose very serious consequences on the parties if he failed to
do so.  Achieving the former at the
expense of the latter encourages litigation and unnecessarily weakens the
finality of arbitration. 








Ideally, the
disclosure process should be both meaningful and practical, undergirding the
ease, efficiency, and finality that has traditionally characterized arbitration
and made it a desirable alternative to litigation. The strong public policy
favoring arbitration could be frustrated if attorney arbitrators are compelled
to disclose attorney-client relationships with non-parties and non-witnesses
that have only tenuous, indirect, immaterial, or remote connections to the
proceeding or the parties.  TUCO
and Mariner do not appear to reach that far.

Casting such a
wide net has many negative implications for both the arbitration process and
the parties who choose it as a means of resolving their disputes. Potential
arbitrators could easily overlook a remote, peripheral, or indirect
relationship with a non-party/non-witness group, giving losing parties an easy
means of asserting a post-award challenge based on Aunrevealed
information.@  As a result, many an
arbitration award could be left hanging by a thread.  Given the burdens that accompany compliance
with such a sweeping and unforgiving disclosure rule, some potential attorney
arbitrators might be reluctant to serve, not only because of the breadth of the
undertaking and significant potential for error, but also because of the
confidential and sensitive nature of peripheral relationships that arguably
might fall within the broad net of required disclosures.[5]  The unwelcome result is a disincentive for
parties to choose arbitration and for lawyers to serve as arbitrators. [6]

Moreover, an
overly broad application of the TUCO standard might actually muddy the
waters for parties who are trying to make informed decisions about potential
arbitrators.  For example, under the
majority=s
interpretation of TUCO,  potential
attorney arbitrators might reasonably seek to guard against any future
challenge to their arbitration awards by producing long and comprehensive
disclosure lists revealing all sorts of remote, indirect, and peripheral
non-party/non-witness relationships.  As
a result, the truly important disclosures might get obscured or overshadowed
amid the inconsequential information and the tenuous ties and connections.  Paradoxically, though disclosures are meant
to clarify and assist in the selection of arbitrators, if not made judiciously,
they have the potential to render the entire disclosure process meaningless. 








Parties often
select  arbitration based on its promise
of  an expedient, inexpensive, and final
result.  If peripheral connections of the
sort at issue here are sufficient to trigger evident partiality, court
intervention in the arbitration process will almost certainly increase,
undermining the ease, efficiency, and finality arbitration is supposed to
provide.  See Prudential Securities,
Inc. v. Marshall, 909 S.W.2d 896, 900 (Tex. 1995) (stating that Athe
fundamental purpose of arbitration [is] to provide a rapid, less expensive
alternative to traditional litigation@).  Parties who bargain
for arbitration are deserving of these benefits.  Of course, they are also entitled to an
impartial decisionmaker and a fair process. 


Parties cannot
be assured a fair process without meaningful arbitrator disclosures. They are
the checks and balances for the integrity of the arbitration process, ensuring
the parties= confidence in the neutrality and impartiality of the
arbitrator who will decide their dispute. 
Unquestionably, an arbitrator should and must reveal any circumstances
that might hinder the rendering of an objective determination.  See TUCO, Inc., 960 S.W.2d at
636.  In close cases, potential
arbitrators should err on the side of disclosure, revealing information even
when the law may not technically require it. 
See id. at 633.  Doing so will
help curb abuses by disgruntled parties searching for a means of invalidating
an unwanted result based on unrevealed information.  








Though,
in this case, it would have been better if Paxson had expressly disclosed his
attorney-client relationship with GHBA, that relationship did not rise to the
level of information that an arbitrator is required  to reveal under TUCO.  The fact Paxson had long served as counsel to
GHBA, standing alone, is insufficient to prompt an objective observer to
reasonably question his impartiality in a dispute in which that group was not a
party or witness and had no interest.  In
finding that this peripheral relationship had to be disclosed, the court casts
too wide a net.  Absent facts that
reasonably suggest that parties who are members of such a large association
have some control or influence, their membership does not make the mere
existence of an attorney-client relationship between the arbitrator and a
non-party/non-witness trade association material and is not a fact that, to an
objective observer, might create a reasonable impression of arbitrator
partiality. Therefore, the arbitrator=s
failure to reveal this information does not constitute evident partiality and
does not warrant vacatur of the arbitration award.  

 

 

 

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered and Majority and
Concurring Opinions filed January 23, 2003.

Panel
consists of Justices Yates, Fowler, and Frost.

 

 











[1]  See ante,
slip op. at p. 7 n.2 (majority opinion).





[2]  Ante,
slip op. at p.7.





[3]  See
id. at 1043B49.  Schmitz is silent as to whether the
parent (non-party) controlled the actions of the subsidiary (party), but even
if the facts showed that the parent corporation had no day-to-day control over
operations of its subsidiary, by definition, the parent owned a controlling
interest in the subsidiary=s
stock.  See United States v.
Bestfoods, 524 U.S. 51, 61 (1998) (defining a parent corporation as a
corporation that controls the subsidiary through ownership of its stock); Black=s Law Dictionary 344 (7th ed.
1999)(defining Aparent
corporation@ as A[a]
corporation that has a controlling interest in another corporation (called a subsidiary
corporation), usu. through ownership of more than one-half the voting stock@);
see also North Am Van Lines, Inc. v. Emmons, 50 S.W.3d 103, 120 (Tex. App.CBeaumont
2001, pet. denied) (stating that Acontrol
is part of the normal framework of a parent/subsidiary relationship@).  





[4]  Ante,
slip op. at p. 7.  





[5]  See
Commonwealth Coatings Corp. v. Continental Cas. Co., 343 U.S. 145,
151 (1968) (stating that an arbitrator Acannot
be expected to provide parties with his complete and unexpurgated business
biography@) (White, J., concurring). 





[6]  See
id. at 150 (AI
see no reason automatically to disqualify the best informed and most capable
potential arbitrators.@)