**TEXAS COMMERCE BANK, National Association, Appellant,**

v.

**UNIVERSAL TECHNICAL INSTITUTE OF TEXAS, INC., Appellee.**

No. 01–98–00353–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 29, 1999.

W. Carl Jordan, Christopher V. Bacon, Houston, for appellant.

Joanne Ray, Larkin C. Eakin, Jr., Charles A. Sturm, Houston, for appellee.

Panel consists of Justices MIRABAL, O'CONNOR, and NUCHIA.

## OPINION

OCONNOR, J.

This is an interlocutory appeal in which Texas Commerce Bank, National Association (TCB), appeals the trial court's orders vacating an arbitration award against Universal Technical Institute of Texas, Inc. (UTI), the appellee. We affirm the trial court's orders and remand to the trial court for further proceedings.

## Background

UTI sued TCB and Anita N. Parker, UTI's former employee, for cashing improperly endorsed checks in excess of $300,000.[1] The parties entered a written arbitration agreement. The agreement provided it could be revoked by any party if one of the arbitrators could not serve and the parties could not agree on a replacement. Under the terms of the agreement, the arbitration would be conducted under the procedural rules and regulations of the American Arbitration Association (AAA) and the arbitrators would apply Texas law to the issues to be arbitrated.

After executing the agreement, the parties began the process of selecting three neutral arbitrators. UTI sent TCB a list with nine potential arbitrators, and asked whether any three were acceptable. With the list, UTI sent background information on two of the nine potential arbitrators, Donald Hawbaker and Mickey A. Mills. The parties ultimately agreed to the appointment of Hawbaker, Mills, and Patrick T. Sharkey.

After their selection, the arbitrators were sent notices of appointment by the AAA that asked them to disclose "any past or present relationship with the parties or their counsel." Hawbaker did not return his form, and Mills responded by saying he had nothing to disclose. As it turns out, Hawbaker did not disclose his former representation of TCB in a lawsuit occurring six years before the arbitration hearing. Mills did not disclose his role as mediator in more than one case in which TCB was a party, nor that he lived in the same condominium building as TCB's in-house counsel in charge of this case.

The arbitration panel awarded UTI $50,-009.24 for its claims against Parker, but held against UTI on its claims against TCB. TCB moved the court to confirm the arbitration award. UTI moved to vacate the award claiming its rights were prejudiced by the evident partiality of two of the arbitrators who had not disclosed their past relationships with TCB.

The trial court stayed the proceedings pending the Texas Supreme Court's decision in *Burlington N.R.R. v. TUCO, Inc.,* 960 S.W.2d 629 (Tex.1997). Following *TUCO* and finding there was evident partiality by one of the arbitrators, the trial court denied TCB's motion to confirm and granted UTI's motion to vacate. The trial court explained its decision to vacate the arbitration award, and concluded that the arbitrator's nondisclosure of former representation of TCB amounted to evident partiality under *TUCO.*

## TAA or FAA?

TCB argues we should apply the Federal Arbitration Act (FAA), not the Texas Arbitration Act (TAA) because the parties did not agree to apply state *arbitration* law when they agreed to apply Texas law. TCB contends the FAA preempts the TAA, unless the parties specifically agreed to apply state arbitration law. We disagree with TCB.

The arbitration agreement stated the arbitrators would "apply the law of the State of Texas to the issues presented." In another case that involved the interpretation of similar language [2] in an arbitration contract, we

---

1. UTI claims Parker formulated a scheme to embezzle UTI monies by cashing and using UTI checks for personal use.

2. The arbitration contract in that case stated, "In rendering the award, the arbitrator shall determine the rights and obligations of the parties according to the substantive and procedural laws

held the TAA applied, not the FAA. *Pepe Int'l Dev. Co. v. Pub Brewing Co.*, 915 S.W.2d 925, 929 (Tex.App.—Houston [1st Dist.] 1996, no writ).

UTI argues that, if the FAA applies as TCB claims, then TCB could not appeal because we have no appellate jurisdiction to consider an interlocutory appeal of a claim brought under the FAA. By pursuing an interlocutory appeal, UTI claims TCB waived any argument against applying the TAA.

■ UTI is correct. We do not have appellate jurisdiction of claims under the FAA. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992); *Smith Barney Shearson, Inc. v. Finstad*, 888 S.W.2d 111, 113 (Tex.App.—Houston [1st Dist.] 1994, no writ). Instead, we presume TCB intended to follow the TAA by choosing to pursue an interlocutory appeal. *See Finstad*, 888 S.W.2d at 113–14.

TCB contends that, even if the TAA applies, we should apply the current version that was amended effective September 1, 1997. We apply the current version, but do not agree with TCB's argument that the amended version effectuated a substantive change. *See* Tex.Civ.Prac. & Rem.Code § 171.014 (repealed), now recodified as Tex .Civ.Prac. & Rem.Code § 171.088.[3]

We hold the current version of the TAA governs this arbitration dispute.

## The Standard Regarding Failure to Disclose

TCB presents one issue on appeal—whether an arbitration award should be vacated because one of the arbitrators did not disclose his former representation of one of the parties to the arbitration. This is a challenge to the trial court's conclusion on evident partiality. *See TUCO*, 960 S.W.2d at 637.

■ The trial court must vacate an award if a neutral arbitrator exhibits "evident partiality." *TUCO*, 960 S.W.2d at 629–30. In *TUCO*, the Supreme Court decided the standard for evident partiality under the TAA. The court discussed the different standards applied by other state and federal courts, as well as the policy concerns associated with each approach. *See id.* at 632–35. It ultimately decided on a broad approach, holding that evident partiality is exhibited when a neutral arbitrator does not disclose facts that might create a reasonable impression of the arbitrator's partiality to an objective observer. *Id.* at 636. A neutral arbitrator has a duty of disclosure, and evident partiality is established from the nondisclosure itself, regardless of whether the nondisclosed information establishes partiality or bias. *Id.* at 636–37.

This standard advances the policy of preserving the integrity of the arbitration process. *Id.* at 637. The court emphasized it is the right of the parties to determine, after full disclosure, whether a particular relation-

---

of the State of Texas." *Pepe*, 915 S.W.2d at 929, n. 5.

3. The current statute was enacted as part of the state's nonsubstantive statutory revision program, which was established in 1963 by statute. It requires the Texas Legislative Council to draft nonsubstantive revisions of the Texas statutes on a topical basis. Chapter 448, Acts of the 58th Legislature, R.S., 1963, now codified as Tex. Gov't.Code § 323.001 *et seq.* The Council is prohibited by Chapter 323 of the Government Code from altering the sense, meaning, or effect of a statute during revision. Tex.Gov't Code § M323.007(b). Accordingly, if a conflict exists between a former statute and a revision made pursuant to the Legislature's directive to the Council to make a nonsubstantive revision, the former statute will control. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 654–55 (Tex. 1989).

The current section of the Civil Practice and Remedies Code dealing with evident partiality, like the rest of the TAA, was "enacted as part of the state's continuing statutory revision program under Chapter 323, Government Code." Act of May 21, 1997, 75th Leg.R.S., Ch. 165, § 1.01, 1997 Tex.Gen.Laws 327. The caption of the act revising Chapter 170 of the Civil Practice and Remedies Code states it relates to nonsubstantive additions to and corrections in enacted codes. *Id.* at 327. Given the express language that the Council may not alter the sense, meaning, or effect of a statute during a revision, any slight change in phrasing in the TAA made by the Council in its revision did not, and could not, affect the substantive meaning of the statute. *See Minton v.. Perez*, 783 S.W.2d 803, 805 (Tex. App.—San Antonio 1990, no writ.) (stating revision made by Council cannot affect substantive meaning of former statute).

ship is likely to undermine an arbitrator's impartiality. *Id.* at 638. If a different standard were applied, the control which the parties contracted for in the arbitration agreement would be undermined. *Id.* at 637.

### The Undisclosed Relationships

It is undisputed that neither Hawbaker nor Mills disclosed their relationships to TCB. The trial court concluded that the nondisclosure of Hawbaker's relationship, but not Mills', might create a reasonable impression of partiality to an objective observer.[4] TCB complains of the trial court's conclusion regarding Hawbaker; therefore, we review the conclusion only as to Hawbaker.

To create a reasonable impression of partiality, TCB insists UTI was required to offer evidence showing the earlier relationship between Hawbaker and TCB was substantial and recent. TCB argues the facts surrounding Hawbaker's relationship to TCB do not create a reasonable impression of partiality to an objective observer; it claims the trial court went outside the record of evidence and based its conclusion on speculation.[5]

UTI was required merely to present the trial court with evidence of facts which might create a reasonable impression of partiality by Hawbaker. *See TUCO*, 960 S.W.2d at 636. UTI was not required to prove Hawbaker was actually biased or prejudiced in favor of TCB. *See id.*

### Hawbaker's relationship to TCB

 Hawbaker did not disclose his former representation of TCB in a $1.5 million lawsuit over an unpaid promissory note. We agree with the trial court that this could create a debate as to whether Hawbaker might be inclined to favor his former client because some facts support the view that

there is partiality, and others support the view that there is not.

The lawsuit occurred six years before the arbitration hearing, and Hawbaker was lead counsel. However, the petition in the lawsuit on behalf of TCB was signed by permission by an associate. There is no evidence showing any discovery or work was conducted by Hawbaker or the amount of fees generated by his work.

If this particular lawsuit was the first for his law firm for a large financial institution such as TCB, it would be significant even if it was not complex because of the potential for other business. If the law firm represented TCB in numerous matters but this was the first matter Hawbaker handled personally as lead attorney, it would also be significant because of potential business. In such a case where the firm had represented TCB on other matters, the attorney might have been consulted by the client or socialized with the client on numerous occasions.

These reasons, many of which were included in the trial court's order, demonstrate that a debate between reasonable observers could occur on the issue of whether the nondisclosed facts "might" create a reasonable impression of partiality.

The record supports the trial court's conclusion, and we do not find error with its application of *TUCO* to the facts in this case.

We affirm the trial court's orders, and remand the cause for further proceedings.

4. The trial court stated it was not persuaded that the mere presence of an earlier relationship through other mediations might create a reasonable impression of the arbitrator's partiality. The trial court stated, "The mere payment of a mediation fee is insufficient to show partiality since both sides pay a fee. Indeed, mediators often antagonize the parties or force both sides to leave a mediation unhappy in order to achieve a successful mediation. Moreover, given the great number of mediations in this county, it is not

surprising that a mediator has previously mediated a case for a large bank such as TCB."

5. We do not read the trial court's order as basing its decision on speculation. Instead, the trial court stated what the undisclosed facts were, and discussed how reasonable, objective observers might view those facts and interpret them differently.