**Reversed and Remanded and Memorandum Opinion filed April 14, 2022.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-20-00197-CV

---

### ABDOLRAHIM SHARIFAN, Appellant

### V.

### LLOYD  KELLEY, Appellee

---

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2019-18502**

---

## MEMORANDUM  OPINION

Appellant Abdolrahim Sharifan appeals the judgment against him upholding the arbitration award in favor of appellee Lloyd Kelley.  In two issues appellant argues that we should vacate the arbitrator's award on the ground of evident partiality of the arbitrator and because the arbitration clause was unconscionable. We reverse and remand.

# I.  EVIDENT PARTIALITY

In his first issue, appellant argues that the arbitration award should be vacated on the ground of evident partiality because the arbitrator, David West, failed to disclose the prior attorney-client relationship between appellee and West or West's law firm.  Appellee argues that appellant has failed to preserve error or waived his argument on appeal because appellant did not (1) object in writing prior to the first arbitration hearing pursuant to the agreement, (2) provide a full record, (3) obtain a ruling on his motion to vacate, or (4) request or obtain findings of fact and conclusions of law.

## A.  General Legal Principles

Review of an arbitration award is "extraordinarily narrow."  *Amoco D.T. Co. v. Occidental Petroleum Corp.*, 343 S.W.3d 837, 841 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).  "Under the TAA, a trial court shall vacate an award if the rights of a party were prejudiced by the 'evident partiality of an arbitrator appointed as a neutral arbitrator.'"  *In re Marriage of Piske*, 578 S.W.3d 625, 628 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (quoting Tex. Civ. Prac. & Rem. Code § 171.088(a)(2)(A)).  A party seeking to vacate an arbitration award bears the burden of presenting a complete record that establishes grounds for vacatur.  *Id.*  "Courts must vacate arbitration awards when 'the rights of a party were prejudiced by . . . evident partiality by an arbitrator appointed as a neutral arbitrator.'"  *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 431 (Tex. 2017) (quoting Tex. Civ. Prac. & Rem. Code § 177.088(a)(2)(A)).

We review a trial court's legal decision of whether to vacate an arbitration award de novo.  *Builders First Source-S. Tex., LP v. Ortiz*, 515 S.W.3d 451, 455 (Tex. App.—Houston [14th Dist.] 2017, pet. denied).  We review any factual findings for legal and factual sufficiency.  *Marriage of Piske*, 578 S.W.3d at 629.

However, when there are no "material conflicts" in the evidence, then no deference is required. *Id.*

"[A] prospective neutral arbitrator . . . exhibits evident partiality if he or she does not disclose facts which might, to an objective observer, create a reasonable impression of the arbitrator's partiality." *Burlington N. R. Co. v. TUCO, Inc.*, 960 S.W.2d 629, 636 (Tex. 1997). "[T]his evident partiality is established from the nondisclosure itself, regardless of whether the nondisclosed information necessarily establishes partiality or bias." *Id.* "While a neutral arbitrator need not disclose relationships or connections that are trivial, the conscientious arbitrator should err in favor of disclosure." *Id.* at 637. "[T]o preserve the integrity of the selection process, we hold that a party who could have vetoed the arbitrator at the time of selection may disqualify the arbitrator during the course of the proceedings based on a new conflict which might reasonably affect the arbitrator's impartiality." *Id.*

## B. Background

Appellee was appellant's attorney in a litigation matter wherein appellant was awarded a judgment (Underlying Litigation). A dispute arose between appellee and appellant regarding how to calculate appellee's attorney's fees. Appellee sought to have the matter arbitrated pursuant to the arbitration provision in the fee agreement.

The arbitration agreement provided in pertinent part that:

[Appellee] will send [appellant] a list of three retired or former Texas court judges and justices. The parties will utilize the 30 days to conduct their own diligence on the proposed arbitrators. [Appellant] will then select a judge from the list and send it back to [appellee]. If [appellant] does not return the list within 30 days, then [appellee] shall select from the list and notify [appellant]. . . . If the judge selected is

3

unable or declines to serve, then the process will be repeated by [appellee] supplying three names, . . . and then [appellant] or [appellee] will select accordingly until an arbitrator is selected. Once selected, the arbitrator shall establish the pre-arbitration procedures and the arbitration procedure. All objections to the arbitrator must be made in writing before the first hearing set by the arbitrator is held or the parties agree that all objections to the arbitrator are thereby waived. Any objection to the arbitrator selected or to the arbitrator's fee must be made before the arbitrator renders a decision or said objection is waived. The Texas Rules of Evidence and Rules or Procedure shall guide the process and proceedings until altered by the arbitrator.

Pursuant to the arbitration provision, appellee submitted three names to appellant, one of whom was David West. Appellant agreed to West as an arbitrator but "conditioned" the agreement on his ex-wife's participation in the arbitration. Appellant's ex-wife refused to participate. Appellant then alleged that he found out that he hired West, on appellee's recommendation, as an expert witness in the Underlying Litigation. Appellant asked for a new arbitrator and appellee refused to agree to a different arbitrator.

Appellant asked the trial court to intervene in the matter and appoint an arbitrator due to appellant's concerns with West due to his involvement in the Underlying Litigation as an expert witness. After listening to arguments from the parties the trial court appointed another arbitrator. However, this arbitrator had a conflict and declined to serve. Thereafter, the trial court granted appellee's motion to compel West as arbitrator. Appellant objected to West's appointment and requested the trial court appoint another former judge as the arbitrator.

Within a few days West confirmed he would serve as the arbitrator for the dispute and set a hearing for October 22. The day before the arbitration hearing, appellant submitted written objections to West. In his objection appellant argued that West could not serve as an impartial arbitrator on a matter in which he was an

4

expert witness.  Appellant also argued that West "has a duty to evaluate and recuse himself."  Appellant also requested that West provide disclosures of any prior or current financial dealings, including appellee's "use or desire of West or any member of West's firm for any purpose be fully disclosed." Attached to the objection were two exhibits: (1) a 2015 email from appellee's firm to appellant requesting money to fund expenses for their expert witness, West; and (2) a March 2012 expert witness designation filed for appellant by appellee in the Underlying Litigation designating West as an expert witness.

West rendered an order denying appellant's motion to recuse.  West then set an arbitration hearing for November 12, 2019.  In the afternoon on the day prior to the hearing, West emailed the parties an affidavit "[i]n response to questions regarding conflicts of interest."  Therein West disclosed that he had been paid $5,000.00 by appellant for West's services as an expert witness in the underlying litigation and that appellant still owed $4,830.50 to West for such services.  West attested that he had also served as an expert witness on a legal malpractice case with appellee in 2005.  West concluded that "as I review these last fourteen years, I had about the same amount of contact with [appellant] as I had with [appellee], and I have no predetermined notions about either one of them."

At the hearing, West and the parties discussed West's disclosures.  Appellant argued that he believed the financial dealings to be an issue that could affect West's impartiality: "in this particular case, we do have a situation where the financial expenses — the list of expenses as between [appellee] and [appellant] are an issue and [West's] actual expenses are part of that calculation."  West indicated that the financial dealings "should be no concern . . .  it may be amusing but it's not a concern" and "that's a non-issue because I don't - - it's not an issue with me."  Appellant requested confirmation that West had sworn that his disclosure

affidavit contained all of West's involvement with appellee over the prior fourteen years. When West confirmed that it was, appellant confronted West with a filing wherein West represented appellee as his attorney in a lawsuit (Undisclosed Lawsuit). West indicated that his son was counsel for appellee in the Undisclosed Lawsuit, but appellant pointed out that the signature line on the filings included West's name and bar number. West admitted that his name was included on the filing and that it was his law firm but indicated that his son was the one in charge of the case. West then remembered the case, stating, "We sued Metro plenty of times. My son is the one who sues them." West remembered that he would help his son and remembered the general subject matter that was litigated. West could not remember if appellee had paid his firm or if the firm was paid by the opposing party as part of the judgment. West stated that appellee "was the instrument that we used to . . . sue MTA. We sued him [sic] more than once." West also stated that he never appeared and never interviewed anybody in the Undisclosed Lawsuit. Appellant then confronted West with a transcript indicating that West had appeared as counsel for appellee at a hearing in the Undisclosed Lawsuit. In response West stated, "You're trying - - you're just being - - I think you're being silly and that's - - that's how much - - much weight I'm putting in all this you're asking me about. It happened, what nine years ago. And I - - first off, I never remember representing [appellee], . . . . I've heard your complaint and it does not impress me."

Appellant then confronted West with his firm's website that promotes its representation of appellee in the Undisclosed Lawsuit. Appellant also questioned whether West had diligently searched his records to uncover any other potential conflicts. West stated it was an inadvertent error on his part and agreed that his disclosure affidavit was inaccurate but not intentionally so. Appellee denied that

West ever represented him but admitted that West's son had. Appellant indicated that he "did not want to proceed with arbitration with inaccurate disclosures." West denied appellant's motion to recuse and continued to hear the merits of the dispute. Appellant refused to participate in the arbitration and left after West made his ruling on recusal.

Shortly thereafter West rendered a final award in the arbitration to appellee. Appellee filed a motion to confirm the arbitration award in the trial court and set it for an emergency hearing. Four days later and before the trial court rendered judgment for appellee, appellant filed a motion to vacate the arbitrator's award and response in opposition to appellee's motion to confirm, attaching as exhibits a reporter's record of the November arbitration hearing, West's disclosure affidavit and attachments, the petition filed in the Undisclosed Lawsuit on behalf of appellee by West's law firm, a reporter's record from a hearing in the Undisclosed Lawsuit, and a printed version of the web page for West's law firm. Appellee filed a response to appellant's motion to vacate but did not attach any exhibits or further evidence.

On December 13, 2019, the trial court rendered a final judgment and confirmed the arbitration award in favor of appellee. The final judgment states that the trial court considered the motion to confirm the arbitration award and "any timely filed responses to same, if any."

## C.    Analysis

It is undisputed that West's law firm represented appellee in a lawsuit approximately nine years before the arbitration in this case. It is undisputed that West did not disclose this representation in his disclosure affidavit or attachments. A prior attorney-client relationship is one that might, to an objective observer, create a reasonable impression of the arbitrator's partiality. *See Tex. Commerce*

7

*Bank v. Universal Tech. Inst. of Tex., Inc.*, 985 S.W.2d 678, 681 (Tex. App.—Houston [1st Dist.] 1999, pet. dism'd w.o.j.) (failure to disclose prior attorney-client relationship between neutral arbitrator and party to arbitration might create a reasonable impression of partiality); *J.D. Edwards World Sols. Co. v. Estes, Inc.*, 91 S.W.3d 836, 843–44 (Tex. App.—Fort Worth 2002, pet. denied) (same); *see also TUCO, Inc.*, 960 S.W.2d at 636.

Appellant was not required to prove that West was actually biased or prejudiced in order to establish evident partiality. *See Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 527 (Tex. 2014); *Tex. Commerce Bank*, 985 S.W.2d at 681. Instead, the nondisclosure itself establishes the evident partiality. *TUCO, Inc.*, 960 S.W.2d at 636; *see also Tenaska Energy, Inc*, 437 S.W.3d at 527 ("[A]lthough intent may be relevant to establishing actual bias or partiality, we made clear in *TUCO* that evident partiality is established from the nondisclosure itself."). Because appellant had the right to veto West at the time of selection, appellant maintained that right based on the new conflict revealed during the course of the proceedings that might reasonably have affected West's impartiality to an objective observer. *See TUCO, Inc.*, 960 S.W.2d at 636. West's failure to disclose information that might lead an objective observer to question his partiality establishes his evident partiality. *See Tenaska Energy, Inc.*, 437 S.W.3d at 527.

## D.    Objection in Writing

Appellee argues that appellant failed to object in accord with the arbitration provision and, therefore, waived his argument regarding evident partiality. Appellee argues that because appellant failed to submit his complaints regarding West's nondisclosure in writing prior to the hearing, appellant has waived his

8

complaint. Appellant argues that a contractual waiver provision cannot be used to circumvent disclosure requirements.

A party who learns of a conflict prior to the arbitrator's decision must promptly object to avoid waiving the complaint. *TUCO, Inc.*, 960 S.W.2d at 637 n.9. While a party cannot waive an objection based on a conflict that they knew nothing about, there could be waiver if the complaining party knew all of the facts and did not complain prior to the conclusion of the arbitration. *See Mariner Fin. Grp., Inc. v. Bossley*, 79 S.W.3d 30, 36 (Tex. 2002) (Owen, J., concurring). While appellant clearly objected to West's nondisclosure at the hearing, he did not file a written objection. Thus, we must determine whether such a failure, per the parties' agreement, constitutes a waiver of the objection.

> The arbitration provision has two sentences regarding objections:
>
> All objections to the arbitrator must be made in writing before the first hearing set by the arbitrator is held or the parties agree that all objections to the arbitrator are thereby waived. Any objection to the arbitrator selected or to the arbitrator's fee must be made before the arbitrator renders a decision or said objection is waived.

Here, appellant complied with the second sentence by objecting at the hearing on the record because the objection was made prior to the arbitrator's decision. Applying the first sentence to the facts herein, appellant cannot be held to waive an objection that he was unaware of and that was not disclosed prior to the first hearing. *See Bossley*, 79 S.W.3d at 33 (majority op.). The disclosures were provided less than a day before the first hearing. At the beginning of the hearing, appellant raised the objection and issues with West's disclosures. These actions are not consistent with waiver.[1]

---

[1] Under the facts herein waiver would incentivize nondisclosure and punish counsel for proactively reviewing and investigating disclosures, and it would be contrary to our directive to "be scrupulous in safeguarding the impartiality of arbitrators." *TUCO, Inc.*, 960 S.W.2d at 633.

Further, we have found no case in which a Texas court determined whether an arbitrating party waives an arbitrator's conflict if the party fails to investigate the arbitrator's background. *See Amoco D.T. Co.*, 343 S.W.3d at 845; *Estes, Inc.*, 91 S.W.3d at 843–44 (rejecting argument that party seeking vacatur should have discovered nondisclosure sooner because information was in a Martindale-Hubble listing); *see also Bossley*, 79 S.W.3d 30, 33–34 (declining to adopt review of whether nondisclosure was discoverable).

## E.  Reporter's Record of Hearings

Appellee argues that appellant failed to preserve error because appellant did not provide a complete record of the arbitration proceeding or provide or obtain a record of the hearing before the trial court on appellee's motion to confirm and appellant's motion to vacate.

Appellee cites to numerous cases supporting his argument that appellant has waived his argument because of this failure, but those cases involved vacating an arbitration award based on arbitrator misconduct or mistake during the arbitration proceedings, wherein the parties would generally need the entire record to establish their vacatur ground. *See Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 569 (Tex. App.—Dallas 2008, no pet.) (seeking vacatur based on arbitrator mistake); *GJR Mgmt. Holdings, L.P. v. Jack Raus, Ltd.*, 126 S.W.3d 257, 263 (Tex. App.—San Antonio 2003, pet. denied) (seeking vacatur based on arbitrator misconduct). *But see Centex /Vestal v. Friendship West Baptist Church*, 314 S.W.3d 677, 684 (Tex. App.—Dallas 2010, pet. denied) (considering issue of whether arbitrator exceeded his power or scope of authority without complete record of arbitration hearing); *Grand Homes 96, L.P. v. Loudermilk*, 208 S.W.3d 696, 706 (Tex. App.—Fort Worth 2006, pet. denied) (noting lack of record of the

10

arbitration proceeding but considering pleadings and agreement in concluding arbitrator did not exceed his authority). Thus, appellee's cases are distinguishable.

It is unnecessary for purposes of this appeal for appellant to bring forth the entire reporter's record of the arbitration proceedings because the only relevant inquiry is whether West disclosed the former attorney-client relationship with appellee to appellant, not whether the arbitrator was actually biased or prejudiced in favor of appellee. *See Tenaska Energy, Inc.*, 437 S.W.3d at 527; *TUCO, Inc.*, 960 S.W.2d at 636; *Tex. Commerce Bank*, 985 S.W.2d at 681.

Appellee next argues that appellant was required to provide a record of the trial court's hearing on confirmation of the arbitration award. We disagree. "A reporter's record is necessary only for evidentiary hearings; 'for nonevidentiary hearings, it is superfluous.'" *Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 910 (Tex. 2017) (quoting *Michiana Easy Livin' Country, Inc v. Holten*, 168 S.W.3d 777, 782 (Tex. 2005)). There is no indication in the record or in the briefs that at the hearing the parties presented evidence, the trial court received evidence at the hearing, or that the trial court did anything but listen to arguments from counsel. Appellee does not contend that the hearing was evidentiary, and appellant denies that it was. *See* Tex. R. App. P. 38.1(g) (may presume true uncontroverted statements of fact); *see also Holten*, 168 S.W.3d at 783 ("Either party . . . may allege that a hearing was evidentiary, but that allegation must be specific. Merely asserting that the trial court 'considered evidence at the hearing' is not enough–trial courts do that when a hearing is conducted entirely on paper, or based solely on affidavits and exhibits filed beforehand."). In the final judgment, the trial court indicates that it considered the motion, response, and argument of counsel, if any. *See Crawford*, 509 S.W.3d at 910 (reviewing language of order and what trial court indicated it considered in making its ruling to determine whether the trial

11

court conducted an evidentiary hearing). Further, evidentiary hearings on confirmation or vacatur of an arbitration award are only held when necessary. *See Broemer v. Houston Lawyer Referral Serv.*, 407 S.W.3d 477, 481 n.12 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Because there is no allegation or indication that the hearing before the trial court was evidentiary, appellant has not waived his issue by not bringing forth a reporter's record of that hearing. *See Crawford*, 509 S.W.3d at 910 (holding no waiver of issue and that the record was adequate despite lack of reporter's record for non-evidentiary hearing).

## F. Ruling on Motion to Vacate

Next appellee argues that appellant failed to obtain a ruling on his motion to vacate and, as a result, has failed to preserve this issue for appeal. We have previously held that a trial court implicitly denies an application to vacate by rendering a final judgment on the award. *See Ctr. Rose Partners, Ltd. v. Bailey*, 587 S.W.3d 514, 531 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *Kreit v. Brewer & Pritchard, P.C.*, 530 S.W.3d 231, 236 n.6 (Tex. App.—Houston [14th Dist.] 2017, pet denied). Here the final judgment references the vacatur motion indirectly:

> After considering [appellee's] Motion and the Arbitrator's Final Award on the Merits, as well as any response and/or argument of counsel pertinent to this dispute, if any, the Court is of the opinion and finds that [appellee's] Motion should be GRANTED and final judgment should be entered accordingly disposing of all remaining issues and all parties in this lawsuit.
>
> . . .
>
> This judgment disposes of all parties and all issues in this case and is an appealable decision. All relief not granted herein is denied.

This general language is sufficient to constitute a ruling on appellant's vacatur motion. *See Ctr. Rose Partners*, 587 S.W.3d at 530 (language "all claims not

expressly granted herein are hereby denied" sufficient to constitute a ruling on affirmative defense of party).

## G.     Findings of Fact and Conclusions of Law

Appellee next argues that because appellant failed to request or obtain findings of fact or conclusions of law, we must imply certain fact findings. To the extent disputes about material facts exist in the context of an evident partiality claim, we review the trial court's resolution of those disputes for legal and factual sufficiency. *Marriage of Piske*, 578 S.W.3d at 629. Where, as here, no findings of fact or conclusions of law have been issued by the trial court, we infer all facts supported by the evidence and necessary to support the judgment. *Id.* But if an evident-partiality determination did not require the resolution of material conflicts, there are no factual findings to which we must defer. *Id.* Here, no material facts were in dispute regarding West's nondisclosure. Appellee and West both admitted that West's law partner, Michael West, represented appellee in the Undisclosed Lawsuit. West admitted that he had failed to disclose this prior relationship in his disclosure affidavit.

Appellee argues that we should imply certain findings, namely that (1) any relationship between appellee and West was disclosed prior to the agreement to use West as an arbitrator; (2) that West did not have an improper motive and could be fair; and (3) any relationship between appellee and West was trivial. However, none of these implied findings are supported by the evidence. *See Retamco Op., Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009) ("When, as here, the trial court does not make findings of fact and conclusions of law in support of its ruling, 'all facts necessary to support the judgment and supported by evidence are implied.'" (quoting *BMC Software Belgium, N.V. v. Marchland*, 83 S.W.3d 789, 795 (Tex. 2002)). There is no evidence to show that the prior attorney-client

13

relationship was disclosed prior to the parties' agreement to use West as the arbitrator, and the evidence demonstrates that it was not disclosed. There is also no evidence to support that the relationship between West's firm and appellee was trivial. The fact that West's firm used appellee's case as a representative client on its public website belies the claim that the relationship and representation was "trivial." *See Estes, Inc.*, 91 S.W.3d at 844 ("The fact that [arbitrator's] law firm included [party to arbitration] as a representative client in its Martindale-Hubble listing belies [arbitrator's] claims that his relationship with [party to arbitration] was trivial.").

Last appellee argues that a "material fact" exists as to when appellant knew about the Undisclosed Lawsuit and that "if appellant had knowledge of these facts then he either waived the issue or he was sitting in ambush waiting to see the results of the arbitration award and then pull out his 'do-over' card." We find this argument uncompelling. Appellant raised the issue of West's prior relationship with appellee during the first arbitration hearing and prior to the final award. Further, it was West's duty to disclose the prior relationship between his firm and appellee. *See Bossley*, 79 S.W.3d at 35 ("[T]he concurrence would excuse even an arbitrator's knowing concealment of a relationship evidencing partiality as long as there are facts from which the arbitrator can presume the complaining party knew it too. But the whole purpose of an arbitrator's duty to disclose is to avoid this very type of speculative presumption and let the parties to the arbitration make the call."); *see also id.* at 36 (Owen, J., concurring) ("What the losing party to an arbitration knew or should have known does not answer the question of whether an arbitrator's nondisclosure exhibits evident partiality."); *Houston Vill. Builders, Inc. v. Falbaum*, 105 S.W.3d 28, 35 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("[R]egardless of whether the [party] knew or should have known of the

14

Arbitrator's attorney-client relationship with GHBA, the Arbitrator's failure to disclose this relationship is evidence of his partiality.").

We sustain appellant's first issue.

## II. UNCONSCIONABILITY

Appellant next argues that the arbitration agreement is unconscionable because it allows appellee to "create a hand-picked list of arbitrators and forces [appellant] to choose among them."

### A. General Legal Principles

A party seeking to compel arbitration bears the burden that an arbitration agreement exists and that the claims presented fall within its scope. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018); *Nationwide Coin & Bullion Reserve, Inc. v. Thomas*, 625 S.W.3d 498, 503 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). Here, there is no dispute that an arbitration agreement exists. Thus, the burden shifts to the party opposing arbitration to prove an affirmative defense to the provision's enforcement, such as unconscionability, to avoid arbitration. *See Henry*, 625 S.W.3d at 115. "If there is conflicting evidence as to the material facts necessary to determine the issues, the trial court is to conduct an evidentiary hearing to resolve the dispute." *Thomas*, 625 S.W.3d at 503.

"The ultimate issue of whether an arbitration agreement is against public policy or unconscionable is a question of law for the court." *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499 (Tex. 2015). We defer to the trial court's factual determinations if they are supported by the evidence and review the legal determinations de novo. *Thomas*, 625 S.W.3d at 503. If there are no factual disputes, the standard of review is de novo. *Lopez*, 467 S.W.3d at 499.

15

Unconscionability is a defense to an arbitration agreement. *Lawson v. Archer*, 267 S.W.3d 376, 382 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Unconscionable contracts are unenforceable. *In re Olshan Foundation Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010) (orig. proceeding). Texas law recognizes both substantive and procedural unconscionability. *Id.* "Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision." *In re Palm Harbor Homes, Inc.,* 195 S.W.3d 672, 677 (Tex. 2006). "Generally, a contract is unconscionable if, 'given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract.'" *Olshan*, 328 S.W.3d at 892 (quoting *In re FirstMerit Bank*, 52 S.W.3d 749, 757 (Tex. 2001) (orig. proceeding)).

Here, appellant complains that the arbitration clause is substantively unconscionable or unfair because appellee controls the composition of the list from which the potential arbitrator is drawn. *See Bonded Builders Home Warranty Assoc. of Tex. v. Rockoff*, 509 S.W.3d 523, 535 (Tex. App.—El Paso 2016, no pet.); *Lawson*, 267 S.W.3d at 383. Appellant did not submit any additional evidence to prove his unconscionability defense but instead relied on the language of the arbitration provision to support his defense. *See Lopez*, 467 S.W.3d at 500 (noting reliance solely on language of the contract to support unconscionability defense to arbitration).

Here, the arbitration clause provides, in relevant part, that:

> Said binding arbitration shall be by a retired or former Texas judge selected according to this section. . . . [T]he Firm will send the Client a list of three retired or former Texas court judges or justices. . .

16

. The client(s) will then select a judge from the list and send it back to the Firm.

Appellant contends that the arbitration selection method is unconscionable because the "provision allows [appellee] to create a hand-picked list of arbitrators and forces [appellant] to choose among them."

There is legal support for this contention, but no such case has been decided on this basis in Texas, although two have come close. *See Lawson*, 267 S.W.3d at 384; *Rockoff*, 509 S.W.3d at 536.

In *Lawson*, the arbitration provision provided that the parties were to agree mutually on three neutral arbitrators, that the arbitrators must be "knowledgeable in, and familiar with, the home inspection profession," and that the arbitrators belong to specified professional organizations. *Lawson*, 267 S.W.3d at 383. This court concluded that because the arbitration provision did not allow one party to "create a list of a limited number of specific arbitrators from which the parties select a panel" but instead "it chose three organizations, none of which, on its face, is necessarily biased," and because the three appointed arbitrators were to be "neutral" and selected by "mutual agreement" of the parties, the provision was not unconscionable. *Id*. at 384.

In *Rockoff*, the court rejected the argument that the arbitration provision therein was unconscionable on its face. *Rockoff*, 509 S.W.3d at 536. The court came to the conclusion because the provision provided that arbitration be conducted before a "neutral third party," thus precluding one side from "designating a captive arbitration company as a potential source of arbitrators." The court further found it compelling that the agreement provided for one party to designate potential arbitration companies as opposed to "specific arbitrators." *Id*. "That distinction places an important step between BBWG and the actual

arbitrator, because whatever company Rockoff selects will then present some list of potential arbitrators from which the parties will designate the actual decision maker." *Id.* (citing *Lawson*, 267 S.W.3d at 384).

Here the arbitration provision lacks that "important step" in place in both *Lawson* and *Rockoff*. Under the provision at issue, appellee picks three names from a group of retired or former Texas judges and submits this short list to appellant. Appellant then chooses the arbitrator from this shortlist created by appellee. There is also no requirement in the provision that the selected arbitrator be "neutral." That said, appellant asks this court to declare the portion of the arbitration provision that provides for selecting the arbitrator unconscionable as a matter of law. Two of the cases cited by appellant for this proposition had much more evidence than this court in support of unconscionability. *See McMullen v. Meijer, Inc.*, 355 F.3d 485 (6th Cir. 2004); *Hooters of Am. v. Phillips*, 173 F.3d 933 (4th Cir. 1999).

In *Hooters of America v. Phillips*, the court analyzed the many ways the arbitration provision favored the employer over its employees. 173 F.3d at 938. For example, employees were required to file a written statement of claims that would later limit the basis on which they could raise issues against the employer, while the employer was not required to file or provide anything in writing to the employee and could add new issues whenever it wanted to. *Id.* at 938–39. The employer would also choose a list of potential arbitrators, without restriction as to who the employer could pick. *Id.* From the employer's chosen list, the employee would pick one arbitrator, the employer would pick one, and the two chosen arbitrators would pick a third arbitrator. *Id.* at 938. The employee presented evidence that the arbitration provision as a whole was so one-sided that no reputable arbitration firm would participate. *Id.* at 939. Because the arbitration

18

provision as a whole was "egregiously unfair" the court concluded the agreement was unenforceable. *Id.* at 940.

In *McMullen v. Meijer, Inc.*, the arbitration provision provided that the employer would select a pool of five arbitrators, each of whom must be (1) an attorney, (2) unemployed by and unaffiliated with the employer, (3) generally recognized as a neutral and experienced labor and employment arbitrator, and (4) listed on the rosters of the Federal Mediation and Conciliation Service or the American Arbitration Association, as well as other arbitration rosters. 355 F.3d at 488. The court was concerned of the risk of a "symbiotic relationship" developing between the arbitrators and the employer but noted that the overall plan and selection criteria was more "even-handed" than that in the *Lopez* case. *Id.* at 493–94 (noting "patently one-sided" nature of the arbitration provision in *Lopez*). However, the "risk of bias inherent" in the selection procedure was demonstrated by evidence that the employer used the same panel of five to seven arbitrators in each arbitration hearing in which it participated in the state of Michigan. *Id.* at 494. The court concluded that this method for selecting arbitrators "prevents [the employer's procedure] from being an effective substitute for a judicial forum because it inherently lacks neutrality." *Id.*

The federal cases referenced by appellant also involve a parameter not addressed by the parties in their briefs. Both *Lopez* and *McMullen* dealt with employee statutory rights under Title VII. While it is acknowledged that employees can be required to arbitrate such statutory claims, "[t]he Supreme Court has made clear that statutory rights, such as those created by Title VII, may be subject to mandatory arbitration *only if* the arbitral forum permits the effective vindication of those rights." *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 658 (6th Cir. 2003) (emphasis added). "Under *Gilmer*, the arbitral forum must

19

provide litigants with an effective substitute for the judicial forum . . . ." *Id.* at 659. This is due to the concerns regarding the "potential inequities and inadequacies of arbitration in individual employment cases, as well as . . . the competence of arbitrators and the arbitral forum to enforce effectively the myriad of public laws protecting workers and regulating the workplace." *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1467 (D.C. Cir. 1997); *see also In re Poly-Am., L.P.*, 262 S.W.3d 337, 352 (Tex. 2008) (orig. proceeding) (holding employer cannot contractually absolve itself from statutory remedies designed to deter Workers' Compensation Act's anti-retaliation provisions; "Were we to endorse [employer's] position and permit enforcement of these remedy limitations, a subscribing employer could avoid the Act's penalties by conditioning employment upon waiver of the very provisions designed to protect employees who have been the subject of wrongful retaliation."); *Walker v. Ryan's Family Steak Houses, Inc.*, 289 F.Supp.2d 916, 923 (M.D. Tenn. 2003) (noting not all statutory rights suitable for arbitration and in determining whether "specific arbitral fora have provided from proper vindication of statutory claims, the Sixth Circuit has considered such factors as the neutrality of the forum, evidence of bias, parties' opportunities for discovery, cost-splitting provisions, limitations on remedies, and the arbitrator selection process.") aff'd, 400 F.3d 370 (6th Cir. 2005); *see also Floss v. Ryan's Steakhouses, Inc.*, 211 F.3d 306, 314 (6th Cir. 2000) (process of picking arbitrators appeared facially reasonable but expressing "serious reservations as to whether the arbitral forum provided under the current version of the EDSI Rules and Procedures is *suitable for the resolution of statutory claims*." (emphasis added)).

Here, the dispute between the parties is contractual in nature and involves appellee's claim for attorney fees and expenses. There are no statutory rights being litigated and no evidence regarding the circumstances of the parties at the

time the agreement was executed. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d at 757 ("[T]he basic test for unconscionability is whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing *when the parties made the contract.*" (emphasis added)); *see also Cole*, 105 F.3d at 1476 ("The fundamental distinction between contractual rights, which are created, defined, and subject to modification by the same private parties participating in arbitration, and statutory rights, which are created, defined, and subject to modification only by Congress and the courts, suggests the need for a public, rather than private mechanism of enforcement of statutory rights.").

Additionally, appellant has not submitted any evidence of appellee's prior arbitrations and the pool of retired or former Texas judges he has selected to serve as arbitrators in those matters. There is no evidence of the "symbiotic relationship" feared in *Meijer*, though we are cognizant of the potential for one to develop. As further evidenced herein, appellant has recourse in invalidating an arbitration award on the basis of evident partiality, as well as arbitrator misconduct or mistake. We are not prepared to declare this arbitration provision unconscionable as a matter of law. We overrule appellant's second issue.

### III. CONCLUSION

The fact that a reasonable person could conclude that the prior attorney-client relationship between West's law firm and appellee *might* affect West's impartiality triggers the duty of disclosure. West's failure to disclose the relationship thus constitutes evident partiality under section 171.088. *See* Tex. Civ. Prac. & Rem. Code § 171.088; *see also TUCO, Inc.*, 960 S.W.2d at 639. For the foregoing reasons, we remand this cause to the trial court with instructions to vacate the arbitration award and, barring further evidence of unconscionability, to

refer the dispute for further arbitration under the agreement of the parties. *See TUCO, Inc.*, 960 S.W.2d at 639–40.


/s/     Ken Wise
        Justice


Panel consists of Justices Wise, Bourliot, and Zimmerer.